UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
INFECTIOUS DISEASE SOLUTIONS, P.C.,   :
               :
         Plaintiff,   :
               :      **OPINION AND ORDER**
    -against-       :      07-CV-5423 (DLI) (MDG)
               :
               :
SYNAMED, LLC, SYNABILLING, INC., BACK  :
KIM, M.D., and BACK KIM, M.D., P.C.,   :
               :
        Defendants.   :
-------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On December 28, 2007, Plaintiff Infectious Disease Solutions, P.C. ("Plaintiff" or "IDS") commenced this diversity action against defendants Synamed, LLC ("Synamed") and Synabilling, Inc. ("Synabilling"). On September 18, 2009, Plaintiff served a second amended complaint ("2d Am. Compl.") on the above referenced defendants and included additional defendants Back Kim, M.D. ("Kim") and Back Kim, M.D., P.C. ("Kim P.C.," collectively with Kim, Synamed and Synabilling, "Defendants"). On September 23, 2010, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is granted in its entirety.

<u>**BACKGROUND**</u>

Plaintiff is a medical practice which specializes in care for patients with high risk infectious diseases.[1] (Plaintiff's Local Rule 56.1 Statement of Facts to Which Exists [*sic*] a

---

[1] Plaintiff's Local Civil Rule 56.1 statement fails to comply with the requirements of the rule. Rather than providing a concise statement of additional material facts as to which it contends that there exists a genuine issue to be tried, Plaintiff merely copied and resubmitted large portions of its complaint. Additionally, Plaintiff inaccurately cites its own exhibits throughout its 56.1 statement. However, except as where otherwise noted, Defendants do not dispute Plaintiff's 56.1

Genuine Issue to be Tried ("Pl. 56.1") ¶ 1; Defendants' Response to Plaintiff's Statement of Facts to Which Exists a Genuine Issue to be Tried ("Def. 56.1 Response") ¶ 1.) Synamed provides Practice Management Software ("PMS") and Electronic Medical Records Systems ("EMR," together with PMS, the "Synamed System") to physicians. (Pl.'s 56.1 ¶ 1; Declaration of Kim Back, M.D. ("Kim Decl.") ¶ 2.) PMS gives certain management capabilities to medical practices such as calendaring, scheduling, accounting and electronic billing. (Pl.'s 56.1 ¶ 2; Def. 56.1 Response ¶ 2.) The EMR is a web based portal that allows a medical practice to access its patient records stored on Synamed's computer servers. (*Id.*) Synabilling provides medical billing and collections services to physicians. (Pl.'s 56.1 ¶ 1; Kim Decl. ¶ 3.) Dr. Kim is the President and sole owner of Synamed and Synabilling. Synamed and Synabilling are financed by Dr. Kim's medical practice, Back Kim, M.D., P.C. (Pl.'s 56.1 ¶ 1; Def. 56.1 Response ¶ 1.)

## I.     The Synamed Contract

On or about August 25, 2004, Synamed contacted IDS by email offering to provide IDS with "turnkey EMR, Billing, E-prescribing, Scheduling, Task and Work Flow Management solution with lab connectivity, image center and drawing module." (Declaration of Christine Ann Zurawski, M.D. ("Zurawski Decl.") ¶ 2 & Ex. A; Def. 56.1 Response ¶ 2.) Based on this representation, IDS entered into a "Subscription Agreement (3-Year Lease)" contract with Synamed effective January 19, 2005 (the "Synamed Contract"). (Pl.'s 56.1 ¶ 2; Kim Decl. ¶ 4 & Ex. A.) The contract required Synamed to provide IDS with, *inter alia*, "the delivery of secure access over the internet to a customized and integrated application of [Synamed's] Electronic Medical Records ("EMR") software[.]" (*Id.*)

statement of facts. Accordingly, the court cites to both Plaintiff's and Defendants' 56.1 Statements to frame the background of this action.

The Synamed Contract includes a choice of law/forum clause stating the Synamed Contract is governed by the laws of the State of New York. (Kim Decl., Ex. A; Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Pl. 56.1 Response") ¶ 3.) The clause provides:

> This Agreement and performance hereunder shall be governed by and construed in accordance with the laws of the State of New York . . . [a]ny and all proceedings related to the subject matter hereof shall be maintained in the New York State Supreme Court for the County of Queens, or the United States District Court for the Eastern District of New York, which courts shall have exclusive jurisdiction for such purpose.

(Kim Decl., Ex. A.) The Synamed Contract also has a "Limitation of Liability" section which provides in pertinent part:

> ANY ACTION OF ANY KIND ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR THE WEBSITE MUST BE COMMENCED WITHIN ONE (1) YEAR OF THE DATE UPON WHICH THE CAUSE OF ACTION AROSE.
>
> …
>
> [SYNAMED] SHALL HAVE NO LABILITY TO [IDS] FOR ANY DIRECT OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES.
>
> …
>
> "[IDS] ACKNOWLEDGES AND AGREES THAT THE FOREGOING LIMITATIONS OF LIABILITY AND REMEDIES REPRESENT BARGAINED FOR ALLOCATIONS OF RISK WHICH WERE NEGOTIATED AT ARM'S LENGTH."

(*Id.*) The Synamed Contract required IDS to pay Synamed a monthly subscription fee for both the EMR and PMS services. (Pl.'s 56.1 ¶ 2; Kim Decl., Ex A.) At the direction of Synamed, IDS entered into a financing agreement with a third party, HSPC, Inc. ("HSPC"), which obligated IDS

to makes its monthly subscription payments directly to HSPC. (Pl.'s 56.1 ¶ 2; Def. 56.1 Response ¶ 2.) In turn, HSPC made a lump sum payment to Synamed at the outset of the Synamed Contract. (*Id.*) At the time, IDS believed it was making payments to Synamed through HSPC and that HSPC was merely the servicing agent for payment. (Dep. of Christine Ann Zurawski, M.D. ("Zurawski Dep.") at 89, 225, attached as Ex. A to Decl. of Adam Joffe, Esq. ("Joffe Decl."); Def. 56.1 Response ¶ 2.)

IDS began using the Synamed System in late February or early March of 2005 and IDS alleges that, from its inception, the Synamed System and services were defective. (2d Am. Compl. ¶ 29; Def. 56.1 ¶ 19.) Between April 18, 2005 and May 31, 2005, IDS sent multiple electronic correspondences to Synamed detailing problems with the Synamed System and requesting training and support. (Pl.'s 56.1 ¶ 3; Defendants' Local Rule 56.1 Statement ("Def. 56.1") ¶¶ 6-7; Kim Decl., Exs. C-F.) Eventually, Synamed denied IDS's requests for training and declined to provide IDS with additional support. (Pl.'s 56.1 ¶ 3; Def. 56.1 Response ¶ 3.)

As a result of the difficulties IDS encountered with the Synamed System, IDS's accounts receivables greatly increased and IDS suffered financial distress. (Pl.'s 56.1 ¶¶ 3, 5; Def. 56.1 Response ¶¶ 3, 5.) In March of 2006, Defendants approached IDS and offered to provide additional services to manage IDS's billing. (Pl.'s 56.1 ¶ 5; Def. 56.1 Response ¶ 5.) As part of contract negotiations, Defendants offered to provide the Synamed EMR for free to IDS during the time Synabilling managed IDS's billing and collection needs. (Pl.'s 56.1 ¶ 5; Def. 56.1 Response ¶ 5.)

## II.    The Synabilling Contract

On March 13, 2006, IDS entered into a six-month "Billing and Collection Services Agreement" with Synabilling (the "Synabilling Contract," together with the Synamed Contract,

the "Contracts").  (Pl.'s 56.1 ¶ 6; Kim Decl. ¶ 5 & Ex. B.)  The Synabilling Contract required

Synabilling to provide "comprehensive collection solutions and services." (Kim Decl., Ex. B.)

The Synabilling Contract further provides that "[Synabilling] will maintain records regarding its

rendition of Services and the status of [IDS] accounts.  On a monthly basis, [Synabilling] will

provide to [IDS] its standard financial and other reports." (*Id.*)  Additionally, the Synabilling

Contract states "SynaMed will provide IDS . . . a Free EMR solution for all physicians including

[certain enumerated] functionality [.]  Furthermore, SynaMed shall make the IDS's monthly lease

payments [to HSPC] until the end of the lease period [.]" (*Id.*)

In consideration for Synabilling's services, IDS made an advance payment of $20,000 to

Synabilling at the outset of the Synabilling Contract to cover billing and collections from

December 31, 2005 to February 26, 2006.  Further, the Synabilling Contract entitled Synabilling

to a percentage of all outstanding bills it collected from March 1, 2006 onward. (Pl.'s 56.1 ¶ 6;

Kim Decl., Ex. B.)  As part of the Synabilling Contract, IDS enabled Synabilling to have access

to IDS's bank accounts from which it debited its fees. (Pl.'s 56.1 ¶ 8; Kim Decl., Ex. B.)

The Synabilling Contract is governed by the laws of the State of New York.  (Def. 56.1 ¶

9;  Pl.  56.1  Response ¶ 9;  Kim  Decl.,  Ex.  B.)    The  Synabilling  Contract  includes  an

"Indemnification and Limitation of Liability" section providing:

> Any cause of action brought by [IDS] against [Synabilling] relating
> to this Agreement or [Synabilling's] performance hereunder must
> be commenced within one (1) year after the date when such cause
> of action accrues.

(Kim Decl., Ex. B.) The "Indemnification and Limitation of Liability" section further provides

that Synabilling:

> SHALL  NOT  HAVE  ANY  LIABILITY  TO  [IDS]  FOR  ANY
> SPECIAL,  INDIRECT,  CONSEQUENTIAL  OR  INCIDENTAL
> DAMAGES FOR ANY ACT OR OMISSION ARISING OUT OF

OR IN CONNECTION WITH THE AGREEMENT OR [SYNABILLING'S] PERFORMANCE HEREUNDER, INCLUDING WITHOUT LIMITATION, ANY THIRD PARTY CLAIMS AND ANY LOSSES, EXPENSES, OR DAMAGES INCURRED BY REASON OF LOST PROFITS OR SAVINGS.

(*Id.*)

Neither Synabilling nor Synamed made any lease payments to HSPC on behalf of IDS to cover the monthly cost of the EMR service during the duration of the Synabilling Contract. (Dep. of Holly Demuro ("Demuro Dep.") at 143-144, attached as Ex. B to Joffe Decl.) Moreover, Synabilling did not provide IDS with standard financial reports detailing Synabilling's collection efforts and explaining the fees charged to IDS. (Pl.'s 56.1 ¶ 6; Def. 56.1 Response ¶ 5.) Accordingly, in September of 2006, IDS terminated its agreement with Synabilling and continued attempting its own billing and collections through the Synamed PMS system. (Pl.'s 56.1 ¶ 9; Def. 56.1 Response ¶ 9.)

### III.    Georgia and New York Actions

On January 24, 2007, IDS commenced an action against defendants Synamed, Synabilling, and Kim in the United States District Court for the Northern District of Georgia (the "Georgia Action"). (Def. 56.1 ¶ 13; Pl. 56.1 Response ¶ 13; Declaration of Philip C. Chronakis, Esq. ("Chronakis Decl."), Ex. 1.) On August 24, 2007, the Georgia Action was dismissed, because the Contracts contain enforceable forum selections clauses making New York the exclusive forum for a cause of action. (Pl.'s 56.1 ¶ 10; Def. 56.1 ¶ 16; Chronakis Decl., Ex. 2.)

On December 28, 2007, IDS commenced the instant action alleging breach of contract, fraud, breach of the covenant of good faith and fair dealing, and violation of New York General Business Law § 349 ("GBL § 349"). (2d Am. Compl. ¶¶ 68-103.) As part of the judgment sought, IDS requests imposition of consequential and punitive damages as well as attorney's fees

and costs pursuant to GBL § 349. Plaintiff also seeks to "pierce the corporate veil" and recover damages from Back Kim, M.D., in his personal capacity and/or from Back Kim, M.D., P.C. (*Id.*)

On September 23, 2010, Defendants moved for summary judgment on the following grounds: (1) Plaintiff's contract-based claims are time-barred; (2) Plaintiff's claims for consequential and punitive damages are precluded by the Contracts' limitation of liability provisions; (3) Plaintiff's fraud based claims should be dismissed because the alleged fraud only relates to breach of contract; and (4) Plaintiff's GBL § 349 claim should be dismissed because the parties' transactions were not consumer oriented. Defendants further assert that (5) the dismissal or limitations of any claims against Synamed or Synabilling warrant the same dismissal or limitations against Back Kim, M.D. and Back Kim, M.D., P.C.[2] (*See* Dkt. Entry No. 101, Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Def. Mem.") at 9.)

## DISCUSSION

### I.     Legal Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the

---

[2] Defendants also move for summary judgment striking certain of Plaintiff's expert reports. (Def. Mem. at 9.) Because summary judgment is granted as to Defendants' other claims, the issue of the expert reports is moot.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F. 3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs.*, *Ltd. P'ship.*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir.1988)).

## II. Analysis

### A. Whether the Uniform Commercial Code or Common Law Governs the Contracts

As an initial matter, the court must determine the appropriate standards of law that govern the Contracts. The Synamed Contract provided IDS a three-year lease of Synamed's web-based EMR and PMS programs. (Kim Decl. ¶¶ 2-3 & Ex. A; Pl. 56.1 ¶ 2.) Defendants argue Synamed's EMR and PMS web-based computer software is a tangible and movable item that should be categorized as a "good" and thereby governed by Article 2 of New York's Uniform Commercial Code ("NY-UCC"). (Def. Mem. at 10.) Plaintiff does not dispute this claim, but instead offers alternative arguments under the NY-UCC and the common law with respect to each claim related to the Synamed Contract. (*See generally* Pl. Br.)

A review of New York case law suggests computer software is appropriately categorized as a good under the NY-UCC. *See Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 432 (S.D.N.Y. 1996) (citing New York State cases) (noting under the NY-UCC that "[g]enerally, software is considered a 'good,' even though a finished software product may reflect a substantial

investment of programming services."); *Richard A. Rosenblatt & Co., Inc. v. Davidge Data Sys. Corp.*, 295 A.D. 2d 168, 168, (1st Dep't 2002) (contract for computer hardware and software user rights is a contract for the sale of goods); *Commc'ns Groups, Inc. v. Warner Commc'ns, Inc.*, 138 Misc. 2d 80, 83 (N.Y. Civ. Co. Ct. 1988) ("[I]t seems clear that computer software, generally, is considered by the courts to be a tangible, and movable item, not merely an intangible idea or thought and therefore qualifies as a 'good' under Article 2 of the UCC."). Accordingly, the court will evaluate the Synamed Contract under NY-UCC Article 2-A, which governs leases.

Defendants argue that the Synabilling Contract is a contract for services which is governed by the common law. (Def. Mem. at 15.) Plaintiff does not dispute this claim. (S*ee generally* Pl. Br.) The court agrees that the common law controls the analysis of the Synabilling Contract.

### B. The Contracts' Statute of Limitations Clauses

Defendants contend they are entitled to summary judgment in their favor with respect to Plaintiff's claims for breach of contract (2d Am. Compl. ¶¶ 68-82) and breach of the covenants of good faith and fair dealing (2d Am. Compl. ¶¶ 93-97) because the claims are time-barred as a matter of law under the terms of the Contracts. (*See* Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Def. Mem.") at 13-18, Dkt Entry 101.) As discussed in more detail below, when viewing the facts in the light most favorable to the non-moving party, the court finds Plaintiff's contract-based claims are time-barred by the Contracts' one-year limitations provision. Accordingly, summary judgment is granted in Defendants' favor as to those claims.

### i. Synamed Contract's Limitations Period

Defendants argue Plaintiff's contract-based claims against Synamed should be dismissed because they were brought after the expiration of the one-year statute of limitations period set forth in the Synamed Contract. Specifically, Defendants argue Plaintiff's claims accrued no later

than April 18, 2005. (Def. Mem. at 14.) Thus, according to Defendants, Plaintiff had until no later than April 18, 2006 to bring its action, approximately nine months before Plaintiff commenced the Georgia Action. Plaintiff contends its cause of action is not time-barred because it did not accrue until January 19, 2008, the date the agreement terminated on its own terms, because of reasonable assurances made by Defendants that the problems with the Synamed System would be cured. (Pl. Br. at 16 (citing NY-UCC § 2-A-517(1)(a).) Based on the record before the court, the court finds that Plaintiff's cause of action accrued more than a year before it commenced the Georgia Action and, thus, was commenced after the expiration of the Synamed Contract's limitations period. Consequently, Plaintiff's contract claims against Synamed are time-barred and must be dismissed.

Under the terms of the Synamed Contract "ANY ACTION OF ANY KIND ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR THE WEBSITE MUST BE COMMENCED WITHIN ONE (1) YEAR OF THE DATE UPON WHICH THE CAUSE OF ACTION AROSE." (Kim Decl., Ex. A.) As noted *supra* in Part II.A, the Synamed Contract is governed by Article 2-A of the NY-UCC. Generally, "[a]n action for default under a lease contract . . . must be commenced within four years after the cause of action accrued." NY UCC § 2-A-506(1). However, "the parties may reduce the period of limitation to not less than one year." *Id.* Accordingly, on its face, the provision in the Synamed Contract reducing the period in which to bring a cause of action to one year is valid and enforceable. *See Cadlerock Joint Venture, L.P. v. Remillard*, 56 A.D. 3d 1095, 1096 (3d Dep't 2008) (dismissing claim commenced after the limitation period set forth in NY UCC § 2–A–506(1)); *see also Gruet v. Care Free Hous. Div. of Kenn-Schl Enter.*, 305 A.D. 2d 1060, 1061 (4th Dep't 2003) (agreed

upon one-year statute of limitations for commencement of an action for breach of contract valid and enforceable pursuant to NY-UCC § 2–725(1)).

A cause of action for default under a lease accrues "when the act or omission on which the default or breach of warranty is based is or should have been discovered by the aggrieved party, or when the default occurs, whichever is later." NY-UCC § 2-A-506(2). The record establishes that Plaintiff discovered the breach or default sometime between the middle of April and the end of May of 2005. As such, Plaintiff's cause of action accrued, at the latest, on May 31, 2005.

Between April 18, 2005 and May 31, 2005, Plaintiff sent numerous emails to Synamed regarding problems Plaintiff was experiencing with the Synamed System. (Kim Decl., Exs. C-F.) Specifically, on April 29, 2005, Plaintiff sent an email to Synamed with an attached document labeled "Synamed Problems." (*Id.*, Ex. C.) The document enumerated twenty (20) discrete problems with the Synamed System. (*Id.*) Plaintiff sent an addendum to the "Synamed Problems" list, enumerating additional problems that Plaintiff experienced on May 5 and May 13 of 2005. (*Id.*, Ex. D.) Finally, Plaintiff sent an email on May 31, 2005, explaining that the Synamed System's inability to change a service provider was "going to be a long standing problem." (*Id.*, Ex F.) Notably, Plaintiff, who began using the Synamed System in February or March of 2005, alleges it was defective from the very beginning. (2d Am. Compl. ¶ 29; *see also* Zurawski Dep. at 116, 126 (detailing problems with the EMR system).) The record thus shows, according to Plaintiff, that: (1) upon first use Plaintiff immediately experienced problems with the Synamed System; (2) the Synamed System was defective from the very beginning; and (3) Plaintiff was aware of and complained of the problems with the System between mid-April and late-May of 2005. Accordingly, the record establishes that Plaintiff's cause of action against the Synamed Contract accrued no later than May 31, 2005.

Plaintiff does not dispute these facts, but instead argues, under NY-UCC §§ 2-A-508(1)[3] and 2-A-517(1)(a), that its cause of action did not accrue until the lease terminated on its own terms on January 19, 2008. (Pl. Br. at 16.) NY-UCC § 2-A-517(1)(a), relates to finance leases and states in pertinent part:

> (1) A lessee may revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the lessee if the lessee has accepted it:
>
> > (a) except in the case of a finance lease, on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured . . . .

According to Plaintiff's interpretation of NY-UCC § 2-A-517(1)(a), "the cause of action did not accrue, and the limitations period did not begin to run [until January 19, 2008] because of the reasonable assurances by the Defendants the problems would be cured." (Pl. Br. at 16.) Plaintiff provides no legal authority or argument to support its interpretations of these NY-UCC sections or to explain their applicability to the Synamed Contract because it cannot as its analysis of NY-UCC § 2-A-517(1)(a) is flawed.

Plaintiff's reliance on NY-UCC § 2-A-517(1)(a) is erroneous as the lease arrangement between Synamed and IDS simply is not a finance lease as defined by the NY-UCC. The definition of "finance lease" is conjunctive, requiring, *inter alia*, a lease with respect to which: "(i) the lessor does not select, manufacture, or supply the goods; (ii) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and (iii) [the occurrence of one of three addition elements.]" NY-UCC § 2A-103(1)(g). In a finance lease arrangement "the lessee negotiates directly with the supplier or manufacturer and then arranges

---

[3] NY-UCC § 2-A-508(1) designates NY-UCC § 2-A-517 as the section that governs a lessee's remedy where the lessee justifiably revokes acceptance of the goods.

for the lessor to buy the goods to lease them to the lessee." *Direct Capital Corp. v. New ABI Inc.*, 13 Misc. 3d 1151, 1160-61 (N.Y. Sup. Ct. 2006) (quoting *Gen. Elec. Capital Corp. v. Nat'l Tractor Trailer Sch., Inc*., 175 Misc. 2d 20, 27 (N.Y. Sup. Ct. 1997). Thus, in a finance lease "the lessor is only supplying the funds to cover the cost of merchandise or equipment that is actually selected and purchased at the lessee's direction from a third party vendor." *Id.* at 1164. The Synamed Contract does not meet the definition of a finance lease. While the Synamed Contract involved a third-party (HSPC), Synamed was the manufacturer and supplier of the Synamed System. Synamed did not purchase the Synamed System from HSPC and lease it to Plaintiff, as is required for a lease to qualify as a finance lease. HSPC merely purchased the right to collect payments on the Synamed System lease. Accordingly, NY-UCC § 2-A-517(1)(a) is inapplicable to the Synamed Contract and Plaintiff's claim that the cause of action did not accrue till January 19, 2008 is meritless.[4]

In viewing the facts in the light most favorable to Plaintiff, the court finds there are no genuine disputes of material fact regarding Plaintiff's contract-based claims. Accordingly, the court finds these claims against Synamed are time-barred and summary judgment is granted in favor of Defendants as to Plaintiff's contract-based claims.

## ii. Synabilling Contract's Limitations Period

Defendants argue Plaintiff's contract-based claims against Synabilling should also be dismissed because they too were brought after the expiration of the one-year statute of limitations period set forth in the Synabilling Contract. Plaintiff contends it complied with the Synabilling Contract's one-year limitation, or, in the alterative, that the one-year limitation should not be

---

[4] Plaintiff also argues that because the Georgia Action was timely filed then, pursuant to NY-UCC § 2-A-506(3), the New York Action also was filed timely. (Pl. Br. 16-17.) Because the court finds the Georgia Action was not timely filed, the argument is moot.

enforced because the Synabilling Contract was the result of fraud and duress. (Pl. Br. at 13.) The court finds, based on the plain and unambiguous terms of the contract, that Plaintiff brought its contract claims against Synabilling after the mutually agreed upon one-year limitation period expired, in contravention of the express contract language. Accordingly, Plaintiff's claims are time-barred and Defendants' summary judgment motion is granted as to Plaintiff's contract-based claims against Synabilling.

Pursuant to Section 213 of New York's Civil Practice Law and Rules ("C.P.L.R."), claims for breach of contract actions must be brought within six years from the time the action accrued. *See* C.P.L.R. § 213(2) (McKinney 2012). However, Section 201 of the C.P.L.R. "allows contracting parties to shorten a statutory period of limitations if that period is contained in a written agreement between the parties." *Micciche v. Kemper Nat. Servs.*, 560 F. Supp. 2d 204, 212 (E.D.N.Y. 2008) (quoting *Patterson-Priori v. Unum Life Ins. Co. of Am.*, 846 F. Supp. 1102, 1105 n.5 (E.D.N.Y. 1994)).

Under the Synabilling Contract "[a]ny cause of action brought by [IDS] against [Synabilling] relating to this Agreement or [Synabilling's] performance hereunder must be commenced within one (1) year after the date when such cause of action accrues." (Kim Decl., Ex. B.) Here, the contracting parties agreed, in writing, to shorten the statutory period of limitations to one year. Thus, IDS and Defendants' agreement to shorten the limitations period is statutorily authorized and valid under New York law. *See Kozemko v. Griffith Oil Co., Inc.,* 256 A.D. 2d 1199, 1200 (4th Dep't 1998) (citing *Diana Jewelers of Liverpool, Inc. v. A.D.T. Co.*, 167 A.D. 2d 965, 966 (4th Dep't 1990)). Moreover, courts applying New York law have regularly upheld the enforceability of contractual limitations provisions similar to the one found in the

Synabilling Contract.  *See Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 606 (S.D.N.Y. 2008) (citing cases).

### 1. Timeliness of Plaintiff's Cause of Action

Generally, under New York law, the limitations period on a cause of action begins to run when the cause of action accrues.  *See* C.P.L.R. § 203(a) (McKinney 2012).  Moreover, it is well settled under New York Law that "[a] cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach."  *Guilbert v. Gardner*, 480 F. 3d 140, 149 (2d Cir. 2007) (citing *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399 (1993)).

Defendants contend that, by Plaintiff's own pleadings, Plaintiff's cause of action accrued as to the Synabilling Contract on March 13, 2006.  (Def. Mem. at 16 (citing 2d Am. Compl. ¶ 44).)  Plaintiff neither rebuts this argument nor offers its own argument as to when the cause of action accrued.  Nonetheless, both parties agree that the Synabilling Contract was terminated on September 1, 2006.  (Pl. 56.1 Resp. ¶ 9; Heslep Dep. at 65; Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J. ("Def. Rep. Mem.") at 8.)  Accordingly, even if the cause of action accrued on the date of termination, Plaintiff had, at the *latest*, until September 1, 2007 to bring its cause of action.  Defendants argue Plaintiff's action is untimely because it was not brought in the proper forum, as defined by the Synabilling Contract, until December 28, 2007, which is after the one-year limitation expired.  (Def. Mem. at 15-16 (citing Chronakis Decl. ¶ 4 & Exs. 1, 3.)  The court agrees with Defendants.

Plaintiff argues that the Synabilling Contract does not require an action to be "pending" within one year of the date the cause of action accrued, but requires only that the cause of action be brought before the expiration of the one-year limitation.  (Pl. Br. at 14.)  Plaintiff thus contends that, by the terms of the contract, it commenced an action on the Synabilling Contract before the

expiration of the one-year limitation when it brought the Georgia Action on January 24, 2007. (*Id.*) Plaintiff further adds, without citation to legal authority, that it merely "renewed" the Georgia Action when it commenced the New York Action and that the Synabilling Contract is devoid of language addressing a renewed action. (*Id.* at 15.) Plaintiff thereby concludes an ambiguity exists in the contract that makes the matter inappropriate for disposition on summary judgment.[5] (*Id.*)

Plaintiff's tortured reading of the Synabilling Contract flies in the face of the plain and unambiguous language of the four corners of the document. Plaintiff, with the assistance of counsel, filed the Georgia Action in violation of the valid forum selection clause. Plaintiff cannot violate the terms of an agreement, which it consciously entered into, and reap the benefit of the violation. Moreover, a party to a contract cannot engage in forum shopping, especially when there is a valid forum selection clause, as a means to circumvent a mutually agreed upon shortening of the statute of limitations.

As discussed *infra*, the court is troubled by the record in this case as it appears that Defendants' may not have lived up to their promises. Nevertheless, the court is constrained to dismiss Plaintiff's claims pursuant to its obligation to apply the law objectively to the facts. Giving Plaintiff the benefit of the doubt, and assuming the cause of action on the Synabilling Contract accrued on the date of termination, September 1, 2006, Plaintiff was obligated, by the

---

[5] Plaintiff also inexplicably argues its Synabilling Contract claims are timely because: "Plaintiff initially filed suit on January 24, 2007 in the United States District Court, Northern District of Georgia, Atlanta Division. The Synabilling Agreement is dated March 13, 2006. Therefore, suit was commenced prior to the inception of the Synabilling Agreement." (Pl. Br. at 14 (internal citations omitted).) The court is at a complete loss as to how Plaintiff's counsel can possibly contend that Plaintiff filed suit on a contract before the contract even came into being. This argument is illogical and meritless.

valid terms with which it agreed, to bring its cause of action in the proper forum no later September 1, 2007.  The plain facts are that Plaintiff failed to do so.[6]

## 2. *Fraud and Duress*

Plaintiff additionally argues that the one-year limitation period in the Synabilling Contract should not be enforced because "the entire Synabilling contract was the result of fraud and duress." (Pl. Br. at 13.)  As both parties note, under New York law "[f]ailure to comply with a contractual limitations period will subject the action to dismissal, absent proof that the limitations provision was obtained through fraud, duress, or other wrongdoing." *Allman*, 530 F. Supp. 2d at 606; (*see also* Pl. Br. at 13; Def. Rep. Mem. at 8.).

Under New York law, the elements of fraud are: "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." *Jablonski v. Rapalje*, 14 A.D. 3d 484, 487 (2d Dep't 2005) (citations omitted).  Moreover, "duress is a species of fraud in which compulsion in some form takes the place of deception in accomplishing an injury." *Candid Prods., Inc. v. SFM Media Serv. Corp.*, 51 A.D. 2d 943, 944  (1st Dep't 1976).  Thus to establish duress, a plaintiff must show "actual or threatened violence or restraint contrary to law."  *Id.*

On the record before the court *as presented by Plaintiff*, Plaintiff has failed to show that the challenged limitation provision was "obtained through fraud, duress, or other wrongdoing." *Allman*, 530 F. Supp. 2d at 606.  Throughout its brief, Plaintiff asserts the events surrounding the

---

[6] The court also finds it curious that while the Georgia Action was dismissed without prejudice, on August 22, 2007, Plaintiff then waited an additional four months before bringing the action in this court on December 28, 2007.  (*See* Chronakis Decl., Exs. 2 & 3.)

entirety of both Contracts were wholly permeated by Defendants' fraudulent activities. (*See generally* Pl. Br.) Certainly such allegations should be taken seriously, but they also must not be spuriously made, but rather must be substantiated by the record. Here, Plaintiff's counsel cites Plaintiff's own deposition transcripts, to support the fraud allegations, but they are either inaccurate or simply not in the record that Plaintiff provided.[7]

In support of Plaintiff's argument that Synabilling fraudulently induced Plaintiff into the Synabilling Contract, it asserts the Synabilling Contract was signed after it "had been driven into financial distress" by Synamed. (Pl. Br. at 7 (citing Zurawski Dep. at 179).) There is no page 179 in the Zurawski Deposition submitted by Plaintiff to this court. (*See* Joffe Decl., Ex. A.) Accordingly, this evidence is not before the court. In further support of its claim that Synabilling fraudulently induced Plaintiff into the Synabilling Contract, Plaintiff asserts "Defendants threatened to withhold additional support on the Synamed agreement until they agreed to the Synabilling Services." (Pl. Br. at 8 (citing Zurawski Dep. at 287).) This is a less than fair or accurate representation of the deposition transcript.[8] The court has carefully reviewed the record

---

[7] For example, on page 11 of Plaintiff's brief, Plaintiff's counsel cites to page 188 of the Deposition of Holly Demuro. (Pl. Br. at 11.) The transcript of the Demuro Deposition submitted by Plaintiff to this court does not include a page 188; rather, the transcript skips from page 148 to 241. (*See* Jofee Decl, Ex. B.) As another example, also on page 11, in the same paragraph, Plaintiff's counsel cites to "Para." [*sic*] 35 of the Deposition of Douglas Heslep, in support of its assertion that "the [Synabilling] system never became functional nor capable of performing the promised tasks." (Pl. Br. at 11 (citing Deposition of Douglas ("Heslep Dep.") at 35, attached as Ex. D to Joffe Decl.) While the Heslep Deposition does contain a page 35, that page of the transcript does not include testimony to the effect that the Synabilling system failed to perform promised tasks. (*See* Heslep Dep. at 35.) The court can only assume that the pages cited would actually support the opposite view of Plaintiff's theory.

[8] The relevant exchange as documented in the transcript of the Deposition of Dr. Zurawski is as follows:

> Defendants' Counsel: Did anyone at SynaMed or SynaBilling ever
> force IDS to enter into the Synabilling Agreement?

and concludes that the record does not support Plaintiff's assertions that Plaintiff was fraudulently induced into the Synabilling Contract. As such, that the contractual limitation provision in the Synabilling Contract was not the product of fraud or duress.

Based on the foregoing, even when the facts are viewed in the light most favorable to Plaintiff, the court finds there are no genuine disputes of material fact regarding Plaintiff's contract-based claims against Synabilling. Accordingly, summary judgment is granted in Defendants' favor with respect to Plaintiff's contract claims against Synabilling and those contract claims are dismissed. *See Allman*, 530 F. Supp. 2d at 606.

### iii. Equitable Tolling of Contractual Limitations Period

Plaintiff also argues that its contract-based claims under both Contracts should not be time-barred because the limitations period should be equitably tolled. (Pl. Br. at 17.) This claim is without merit. As Plaintiff notes, equitable tolling is only appropriate under New York law where, *inter alia*, "it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." *TIG Ins.*

> …
>
> Dr. Zurawksi: No.
>
> Defendants' Counsel: Did anyone at SynaMed or SynaBilling every make any threats of economic coercion to IDS regarding the SynaBilling agreement?
>
> Dr. Zurawski: I don't understand what that means.
>
> Defendants' Counsel: Did anyone at SynaMed or SynaBilling threaten not to work on the IDS account if they did not execute the SynaBilling Agreement?
>
> Dr. Zurawski: We were told that they wouldn't be spending any more time working on our account unless they were doing all of the billing of [*sic*] themselves.

(Zurawski Dep. at 287:1-2, 5, 6-15.)

*Co. v. Newmont Min. Corp.*, 413 F. Supp. 2d 273, 281 (S.D.N.Y. 2005). Plaintiff has not shown that its delay in filing suit was affirmatively caused by the Defendants' actions. Moreover, there is absolutely nothing in the record to support this contention. Thus, the court declines to equitably toll the limitations period in the Contracts.

### C. Fraud Claims

As part of its second cause of action, Plaintiff alleges a general fraud claim against Defendants. Defendants contend that Plaintiff's allegation of fraud should be dismissed as it is entirely related to Defendants' alleged breach of contract and that New York does not recognize an independent claim for fraud when the allegations of fraud relate to a breach of contract. (Def. Mem. at 18.)

As an initial matter, the fraud claims arise out of, or are connected with, Defendants' alleged conduct under the Contracts. Accordingly, the fraud claims are barred by the limitations provisions in the contract. (*See* Kim Decl. Exs. A & B.) Moreover, Plaintiff's fraud claims are not independent from its contract claims, and, therefore, are not cognizable under New York law.

It is well settled under New York law that "a cause of action seeking damages for fraud cannot be sustained when the only fraud charged relates to a breach of contract." *Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F. Supp. 1012, 1016 (E.D.N.Y. 1996) (citing cases); *Long Island Lighting Co. v. IMO Delaval, Inc.*, 668 F. Supp. 237, 240 (S.D.N.Y. 1987). Moreover, under New York law, a contract claim cannot be transformed into a fraud claim by simply alleging a defendant "entered the . . . agreement while intending not to perform it." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 330 (S.D.N.Y. 2009) (internal quotation marks and citation omitted); *see also Bridgestone/Firestone, Inc. v. Recovery Credit*

*Servs., Inc.*, 98 F. 3d 13, 19-20 (2d Cir. 1996) (an intentionally false statement of intent to perform a contract does not rise to an independent fraud claim).

Thus, as both parties agree (*See* Pl. Br. at 6; Def. Rep. Mem. at 4), to maintain a fraud claim in a contractual setting under New York law a Plaintiff must demonstrate: (1) a legal duty separate from the duty to perform under the contract; (2) a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) special damages that are unrecoverable as contract damages. *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 440-441 (S.D.N.Y. 2010) (citations omitted). Plaintiff has shown neither that Defendants violated a legal duty owed to Plaintiff, separate from its duty to perform under the Contracts, nor a fraudulent misrepresentation by Defendants that is collateral or extraneous to the Contracts.

A legal duty separate from the duty to perform under the contract exists "where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Cirillo v. Slomin's Inc.*, 196 Misc. 2d 922, 928 (N.Y. Sup. Ct. 2003) (internal quotation marks omitted). A contracting party thus has "a legal duty to speak truthfully and accurately" about a product it offers and "to disclose any material limitations . . . that would not be apparent to the purchaser." *Id.* Put another way, where a party to a contract makes a false representation of a present fact, as opposed to where the party breaches a contractual promise after the promise is made, a fraud claim, independent of the contract, may lie. *See FSP, Inc. v. Societe Generale*, 2005 WL 475986, at *9 (S.D.N.Y. Feb. 28, 2005) (citing *Stewart v. Jackson & Nash*, 976 F. 2d 86, 89 (2d Cir. 1992)).

With respect to the Synamed System, the evidence shows that the system was indeed riddled with problems. (*See* Kim Decl., C-F.) Moreover, the record also shows that Defendants acknowledge that components of the lab interface with the Synamed System were not operational

at the time the Synamed Contract was entered into. (Demuro Dep. at 131-32.) Similarly, the record shows that Defendants were aware that problems existed with the PMS program. (Heslep Dep. at 162-63.) What Plaintiff has not shown is that Defendants made a false representation of present fact; instead the evidence all points to Defendants' failure to fulfill promises made under the contract. Thus, an independent claim for fraud does not lie as to the Synamed Contract.

Similarly, the overwhelming evidence shows Defendants' alleged conduct with respect to the Synabilling Contract also relates to violations of contractual promises instead of misrepresentations of present facts. For example, the record shows Defendants never made lease payments to HPSC on behalf of Plaintiff as required under the Synabilling Contract. (*See* Demuro Dep. at 143-44.) The record also shows that Defendants had the ability to debit monies from Plaintiff's bank accounts, pursuant to the Synabilling Contract, and that Defendants were obligated under the Synabilling Contract to maintain billing records and provide invoices and accountings for Plaintiff. (Heslep Dep. at 122; Demuro Dep. at 142.) However, during the entire duration of the Synabilling Contract, Defendants only provided one invoice to Plaintiff and neither party has been able to determine the amount of money Synabilling collected on behalf of Plaintiff and, thus, determine whether Synabilling debited more monies than it was entitled to from Plaintiff's bank accounts. (Demuro Dep. at 142; Heslep Dep. at 158; Zurawski Dep. at 250.) While these allegations are troubling, the conduct complained of relates to Defendants' failure to fulfill promises made under the contract. Thus, as with the Synamed Contract, an independent claim for fraud does not lie.

In viewing the facts in the light most favorable to Plaintiff, the court finds there are no genuine disputes of material fact regarding Plaintiff's fraud claims, which claims, under New

York law, cannot be sustained as they are not independent from Plaintiff's contract claim. Accordingly, Plaintiff's fraud claim is dismissed.

### D. GBL § 349(a) Claim

Plaintiff alleges, as its fifth claim, that Defendants' conduct constitutes deceptive acts and practices in violation of N.Y. General Business Law Section 349 ("GBL § 349"). Accordingly, Plaintiff seeks reasonable attorney's fees pursuant to Section 349. (2d Am. Compl. ¶¶ 101-102.) Defendants move to dismiss this claim on the ground that GBL § 349 is inapplicable to the transaction between Plaintiff and Defendants. (Def. Mem. at 19.)

GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a) (McKinney 2012). To state a claim under this section a plaintiff must show: "(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. JP Morgan Chase & Co.,* 498 F. 3d 111, 126 (2d Cir. 2007). Under New York law, "the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes.' " *Cruz v. NYNEX Info. Res.*, 263 A.D. 2d 285, 289 (1st Dep't 2000) (citation omitted). Thus, "it has repeatedly been held that when the activity complained of involves the sale of commodities to business entities only, such that it does not directly impact consumers, section 349 is inapplicable." *Shema Kolainu–Hear Our Voices v. Providersoft*, —— F.Supp.2d ——, ——, 2010 WL 2075921, at *7 (E.D.N.Y. May 21, 2010) (citing cases).

Here, the record shows Defendants' products are designed for, and used by, highly sophisticated medical practitioners. (*See* Kim Decl. ¶¶ 2-3.) Nothing in the record shows

Defendants' product was directed toward consumer use.  Accordingly, there being no disputed issue of material fact that Defendants' products are not consumer oriented, summary judgment is granted in Defendants' favor and Plaintiff's GBL § 349 claim is dismissed as matter of law.  *See Shema Kolainu–Hear Our Voices*, 2010 WL 2075921, at *7 (marketing a software product to a not-for-profit corporations does not qualify as consumer-oriented conduct and accordingly § 349 claim must be dismissed).

   *E.  Remaining Claims*

   Because Plaintiff's contract based claims and fraud claims against Synabilling and Synamed are dismissed as a matter of law, those claims are also dismissed as to Dr. Back Kim, and Back Kim P.C. in their individual capacities.  Moreover, as the contract and fraud claims are dismissed, Plaintiff's claim seeking punitive damages as well as Defendants' motion to strike certain expert reports are now moot.

## CONCLUSION

   For the reasons set forth above, Defendants' motion for summary judgment is granted in its entirety and the complaint is dismissed.


SO ORDERED

DATED: Brooklyn, New York
         March 30, 2012

                                    _____/s/_____
                                         DORA L. IRIZARRY
                                       United States District Judge